UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

FILED
CLERK'S OFFICE

U.S. DISTRICT COURT
DISTRICT OF MASS

| |  |
|---|---|
| BPB, LLC and HOMEBASE PROPERTIES, LLC d/b/a Munchies', Plaintiffs. <br><br> v. <br><br> JOSEPH J. MILLER, Defendant. | DOCKET NO. 04-30021-MAP |

### AFFIDAVIT IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY AND TEMPORARY RELIEF PURSUANT TO M.R.C.P. 65 AND M.G.L. C. 214 § 3

1. My name is J. Joseph Breault and I am a member and owner of BPB, LLC ("BPB") and Homebase Properties, LLC ("Homebase"). Both LLC's are authorized to do business in the Commonwealth of Massachusetts. Under oath I state as follows:

2. Homebase is the owner of real estate located at 1525 West Housatonic Street in Pittsfield, Massachusetts, formerly the site of a pub and restaurant known as Munchies' ("Munchies'").

3. Prior to November 2003, BPB was the holder of the liquor license ("liquor license") used on site to permit the sale of alcohol on the Munchies' premises.

4. On or about May 7, 2003, Homebase entered into a purchase contract ("Contract") for the sale of Munchies' to the Defendant, Joseph J. Miller ("Miller"). A copy of the purchase and sale agreement is attached to Plaintiffs' complaint as *Exhibit A*. BPB, as the owner of the liquor license, later was made a party to the Contract by way of an addendum also attached to Plaintiffs' complaint as *Exhibit A*.

5. As contained in Paragraph 8 of the Contract, the closing date was scheduled for September 1, 2003. The Contract was contingent upon Miller's transfer of the liquor license, scheduled to occur no later than August 15, 2003. See ¶ 36 of *Exhibit A* attached to Plaintiffs' complaint.

6. According to the terms of the Contract, Miller paid a deposit in escrow to be held by RE/MAX Integrity Realtors, Inc. ("RE/MAX") partially to cover the 10% in liquidated damages payable to Homebase in the case of Miller's breach. See ¶ 31 of *Exhibit A* attached to Plaintiffs' complaint.

7. Miller hired counsel to transfer the liquor license through the local licensing authority. Homebase and BPB participated in this process by executing all the appropriate transfer documents as requested by Miller.

8. On August 28, 2003, at the Defendant's request and since the liquor license had yet to transfer, an extension agreement was entered into between Homebase and Miller in which Homebase agreed to extend the time for closing up to and including October 15, 2003. The parties specifically agreed as follows:

> "The parties further agree that in the event that the City of Pittsfield or the Alcoholic Beverages Control Commission fails to approve or deny the liquor license transfer on or before October 15, 2003, further reasonable extensions will be made to accommodate the successful transfer of the liquor license"

See *Exhibit B* attached to Plaintiffs' complaint entitled Extension Agreement.

9. The liquor license transfer was approved by the local licensing board on July 21, 2003 and forwarded to the ABCC for final approval.

10. Although not aware when the Contract was entered into between Homebase and Miller planned (and sought) to obtain an entertainment license for nude dancing at the Munchies' location. In September 2003, Miller filed an application for an entertainment license before the local licensing board seeking approval for nude dancing at the Munchies' location. This application was denied in September 2003.

11. In September 2003, Homebase became aware of a temporary hold on the liquor license transfer due to a Department of Revenue ("DOR") issue. Homebase immediately engaged its accountant to resolve any DOR issues. William Fenton, CPA forwarded to the DOR all documents on or about September 3, 2003. DOR's concerns were satisfied and DOR released the hold on the liquor license transfer thus allowing the transfer to take place. By September 29, 2003, DOR had authorized the ABCC to allow the transfer of the liquor license.

12. On or about October 15, 2003, the ABCC approved the transfer of the liquor license and forwarded the approval to the local licensing board.

13. On October 15, 2003, Miller communicated with counsel for Homebase and indicated that he was no longer represented by counsel. He advised he was attempting to obtain replacement counsel to complete the transaction. On October 15, 2003, Miller specifically requested of Homebase's counsel an extension up to and including October 24, 2003 to complete the transaction. As a result of this conversation, an extension was prepared and faxed to Miller on October 15, 2003 in which Miller agreed to extend the time of closing through October 24, 2003. See Addendum to Purchase and Sale Agreement attached to Plaintiffs' complaint as *Exhibit B*.

14. Not receiving any response to the Extension Agreement faxed on October 15, 2003, counsel for Homebase forwarded to Miller correspondence dated October 24, 2003 indicating that Plaintiffs were ready, willing and able to close. However, Miller had not signed the Extension Agreement nor taken other steps to find replacement counsel. On October 24, 2003, Homebase notified Miller that he was in breach of the agreement and demanded a release of the deposit to be paid in the form of liquidated damages. See *Exhibit D* attached to Plaintiffs' complaint.

15. In early November 2003, following the transfer of the liquor license to Miller and the cancellation of the Contract, Homebase, through counsel, requested that Miller sign a letter agreeing to transfer the liquor license back to BPB as the Contract had been terminated. See correspondence dated November 17, 2003 attached to Plaintiffs' complaint as *Exhibit E*.

16. Plaintiffs' counsel was then contacted by Attorney Douglas J. Rose who indicated that he was now representing the Defendant.

17. As of November 17, 2003, Homebase was unable to market or successfully transfer the business as the liquor license was now in the name of Miller, not BPB.

18. On November 25, 2003 despite knowledge that the underlying Contract had been terminated, Miller crossed out "BPB" and "Munchies' Pub" on the application for the renewal of the liquor license and submitted the application with "Joseph Miller" and "Nirvana" written in its place. See License Renewal Application for 2004 as *Exhibit F* to Plaintiffs' complaint.

19. On or about January 12, 2004, Miller while continuing to wrongly hold the liquor license sent a demand that Homebase and BPB accept a counteroffer of $62,000 less than the originally agreed contractual price or be subject to litigation. See correspondence dated January 12, 2004 attached as *Exhibit G* to the complaint.

20. Miller's wrongful holding of the liquor license is causing immediate and irreparable harm to the Homebase and BPB. Homebase cannot sell or operate the established business without the liquor license nor can it market the property without the liquor license.

DATED: February 5, 2004                   _____
                                          J. JOSEPH BREAULT