**Commonwealth of Massachusetts**
**BERKSHIRE SUPERIOR COURT**
**Case Summary**
**Civil Docket**

FILED
IN CLERK'S OFFICE

# BECV2004-00036
## BPB, LLC et al v Miller

2004 FEB -6  A 10: 19

U.S. DISTRICT COURT
DISTRICT OF MASS

C4 CV 30021-MAP

| | | | | | | |
|---|---|---|---|---|---|---|
| **File Date** | 01/29/2004 | **Status** | Disposed: transfered to other court (dtrans) | | | |
| **Status Date** | 02/04/2004 | **Session** | A - Civil A - CtRm 1 | | | |
| **Origin** | 1 | **Case Type** | D01 - Specific performance of contract | | | |
| **Lead Case** | | **Track** | A | | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 04/28/2004 | **Answer** | 06/27/2004 | **Rule12/19/20** | 06/27/2004 |
| **Rule 15** | 04/23/2005 | **Discovery** | 03/19/2006 | **Rule 56** | 05/18/2006 |
| **Final PTC** | 09/15/2006 | **Disposition** | 01/28/2007 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
BPB, LLC
Active 01/29/2004

**Private Counsel 542152**
David R Cianflone
59 Bartlett Avenue
Pittsfield, MA 01202
Phone: 413-447-7366
Fax: 413-445-4089
Active 01/29/2004 Notify

**Plaintiff**
Homebase Properties LLC
Active 01/29/2004

*** See Attorney Information Above ***

A True Copy
Attest: _[signature]_ Deborah S. Capeless
Clerk

**Doing busnss as (alias)**
Munchies'
Active 01/29/2004

**Defendant**
Joseph J  Miller
Service pending 01/29/2004

**Private Counsel 629080**
Douglas J Rose
1330 Mass MoCA Way
North Adams, MA 01247
Phone: 413-663-3200
Fax: 413-663-7970
Active 02/04/2004 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 01/29/2004 | 1.0 | Complaint & civil action cover sheet filed |
| 01/29/2004 | | Origin 1, Type D01, Track A. |

**Commonwealth of Massachusetts**
**BERKSHIRE SUPERIOR COURT**
**Case Summary**
**Civil Docket**

## BECV2004-00036
## BPB, LLC et al v Miller

| Date | Paper | Text |
|------|-------|------|
| 01/29/2004 | 2.0 | Jury demand on all issues filed by plaintiffs. |
| 01/29/2004 | 3.0 | Plaintiffs Motion for Preliminary Injunction, filed. |
| 01/29/2004 | 4.0 | Plaintiffs Motion for Temporary Restraining Order Ex-parte (or upon short order of notice), filed. |
| 01/29/2004 | 5.0 | Affidavit in support of Plaintiffs' motion for preliminary injunction and temporary relief pursuant to M.R.C.P. 65 and M.G.L. C. 214, S.3, filed. |
| 01/29/2004 | 6.0 | Uniform Counsel Certification for Civil Cases, filed. |
| 01/29/2004 | 7.0 | Notice of appearance of David R Cianflone Esq. for plaintiffs, filed. |
| 01/30/2004 | | MOTION (P#4) -Short order of notice to issue, returnable on Wednesday, February 4, 2004 at 2:00 pm (Daniel A Ford, Justice). Certified copy to plaintiffs counsel along with blank order of notice forms |
| 02/04/2004 | 8.0 | Notice of appearance of Douglas J Rose, Esq for the defendant, Joseph J Miller, filed. |
| 02/04/2004 | 9.0 | Assented To Motion to continue hearing scheduled for Wednesday, February 4, 2004 at 2:00 pm to Monday, February 9, 2004 at 2:00 pm, filed and ALLOWED (Agostini, J). Certified copy to counsel. Counsel also notified by telephone. |
| 02/04/2004 | 10.0 | Notice for Removal to the United States District Court filed by Joseph J Miller |

### EVENTS

| Date | Session | Event | Result |
|------|---------|-------|--------|
| 02/04/2004 | Civil A - CtRm 1 | Motion/Hearing: order of notice | Event rescheduled by court prior to date |
| | | Short order of notice returnable on motion for tro | |
| 02/09/2004 | Civil A - CtRm 1 | Motion/Hearing: order of notice | Event canceled not re-scheduled |
| | | Short order of notice returnable on TRO | |

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 04-036 | Trial Court of Massachusetts Superior Court Department County: Berkshire |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| BPB, LLC- and HOMEBASE PROPERTIES, LLC d/b/a Munchies' | JOSEPH J. MILLER |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE 413.447.7366 | ATTORNEY (if known) |
|---|---|
| DAVID R. CIANFLONE 59 Bartlett Ave., Pittsfield, MA 01201 Board of Bar Overseers number: 542152 | |

## Origin code and track designation

Place an x in one box only:

[X] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
[ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| D01 | Equitable Relief (Specific Performance) | (A) | |
| A99 | Contract (Purch & Sale Agt) | ( F ) | |
| B99 | Tort (Conversion) | ( F ) | ( X ) Yes     ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages.  For this form, disregard double or treble damage claims; indicate single damages only.

## TORT CLAIMS

(Attach additional sheets as necessary)

A.    Documented medical expenses to date:
1.    Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . .
2.    Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . .
3.    Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . .
4.    Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . .
5.    Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . .
                                                                            Subtotal $. . . . . . . . .
B.    Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . .
C.    Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . .
D.    Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . . $. . . . . . . . .
E.    Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . .
F.    Other documented items of damages (describe)
                                                                                    $. . . . . . . . .
G.    Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                                    $. . . . . . . . .
                                                                            TOTAL $. . . . . . . . .

A True Copy

## CONTRACT CLAIMS

(Attach additional sheets as necessary)

Provide a detailed description of claim(s): The Defendant unknown to the Plaintiffs transferred the Plaintiffs' Liquor License Renewal Application into his own name and the name of his business without the Plaintiffs' knowledge or consent.

                                                                    TOTAL $. Equitable Relief

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____    DATE: _____

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT
SUPERIOR COURT DEPARTMENT

BERKSHIRE, SS                                              CIVIL ACTION NO. __04·036__

|  |  |
|---|---|
| BPB, LLC and HOMEBASE ) PROPERTIES, LLC d/b/a Munchies', ) ) Plaintiffs. ) ) v. ) ) JOSEPH J. MILLER, ) ) Defendant. ) | **COMPLAINT** |

## INTRODUCTION

Plaintiffs, BPB, LLC and Homebase Properties, LLC, hereby bring this action for damages arising from a breach of contract for the purchase and sale of real estate, violations of G.L. c. 93A § 11 and conversion. Plaintiffs further pray for equitable relief either in the form of specific performance on the contract or, pursuant to Chapter 93A, affirmative enjoinment of Defendant Miller to return the liquor license he wrongfully holds to Plaintiff BPB, LLC and enjoinment of the Defendant from taking steps to hinder the transfer of the contractual deposit from RE/MAX Integrity Realtors, inc. to Plaintiffs.

## PARTIES

1.      Plaintiff, BPB, LLC ("BPB"), is a domestic limited liability company with its principal place of business at 1525 West Housatonic Street, Pittsfield, Massachusetts.

2.      Plaintiff, Homebase Properties, LLC ("Homebase"), is a domestic limited liability company with its principal place of business at 1525 West Housatonic Street, Pittsfield, Massachusetts.

A True Copy
Attest _____
Clerk

3.     Defendant, Joseph J. Miller ("Miller"), is an individual with a place of residence at 66 Lovers Lane, Somers, Connecticut.

## BACKGROUND

4.     Homebase is the owner of real estate and improvements thereon located at 1525 West Housatonic Street, Pittsfield, Massachusetts, formerly the site of a pub and restaurant known as "Munchies' Pub" ("Munchies").

5.     Prior to November 2003, and at all times material to the present case, BPB was the holder of a liquor license ("Liquor License") permitting the sale of alcohol on the Munchies' premises.

6.     On May 7, 2003, Homebase contracted to sell Munchies' Pub to the buyer, Defendant Miller.  BPB was later made a party to the Purchase and Sale Agreement by a mutually agreed addendum.  See Purchase and Sale Agreement and Addendum, attached hereto as *Exhibit A*.

7.     As required by the Purchase and Sale Agreement, Miller paid a deposit into escrow, held by RE/MAX Integrity Realtors, Inc. ("RE/MAX") to partially cover the 10% in liquidated damages payable to Plaintiffs in the case of a buyer's breach.  See Purchase and Sale Agreement, attached hereto as *Exhibit A* at ¶¶ 3,31.

8.     The Purchase and Sale Agreement made the sale of the property contingent upon the transfer of the Liquor License from BPB to Miller.

9.     On August 28, 2003, the parties mutually extended the closing date from September 1, 2003 until October 15, 2003 for the express purpose of allowing "adequate time for the approval of the Liquor License transfer between the holder of the Liquor License, BPB, LLC and Joseph Miller d/b/a Nirvana."  The parties also agreed that "further reasonable extensions will be made to accommodate the successful transfer of the Liquor License" if such license

2

doesn't transfer "on or before October 15, 20003." See <u>Extension Agreement</u>, attached hereto as *Exhibit B.*

10.    In September, Miller attempted to obtain an entertainment license for a nude dancing bar for the Munchies' location, but the licensing board denied Miller's application sometime in September.

11.    In early October, counsel for Plaintiffs contacted Miller to determine who would be handling the closing on his behalf, but was told that Miller had not yet retained replacement counsel to handle the October 15 closing.

12.    On October 15, the Liquor License was transferred to Miller and Plaintiffs were ready and willing to close on that date. See <u>Form 43</u>, attached hereto as *Exhibit C.*

13.    On October 15, 2003, Plaintiffs agreed to grant Miller's request for a final extension of the Purchase and Sale agreement from October 15, 2003 to October 24, 2003 so he could obtain replacement counsel.

14.    On October 24, 2003, Miller breached the Purchase and Sale Agreement by failing to perform, and Plaintiffs terminated the contract. See <u>Cancellation Letter dated October 24, 2003</u>, attached hereto as *Exhibit D.*

15.    Despite repeated demands, Miller has not authorized release of the deposit, as required by the Purchase and Sale Agreement.

16.    In early November 2003, following the transfer of the Liquor License and the cancellation of the contract, BPB, through its attorney, requested that Miller sign a letter agreeing to transfer of the Liquor License back to BPB because the deal had been terminated. See <u>Letter dated November 17, 2003</u>, attached hereto as *Exhibit E.*

17.    On November 25, 2003, despite knowledge that the underlying contact had been terminated, Miller crossed out "BPB" and "Munchies' Pub" on the application for renewal of the

Liquor License, and submitted the application with "Joseph Miller" and "Nirvana" written in their place. See License Renewal Application for 2004, attached hereto as *Exhibit F*.

18.    On or about January 12, 2004, Miller, while continuing to wrongly hold the Liquor License, sent a demand that Plaintiffs accept a "counteroffer" of $62,000 less than the original agreed contractual price, or be subject to litigation. See Letter dated January 12, 2004, attached hereto as *Exhibit G*.

## CAUSES OF ACTION

## COUNT I — BREACH OF CONTRACT

19.    The Plaintiffs incorporate the allegations contained in Paragraphs 1 - 18 as if originally stated herein.

20.    Miller's failure to perform on the mutually agreed performance date of October 24, 2003 constituted an express breach of the Purchase and Sale Agreement.

21.    Miller's failure to release the deposit held in escrow to Plaintiffs constituted a breach of the Purchase and Sale Agreement.

22.    Plaintiffs suffered damages as a result of Defendant's breach.

WHEREFORE, the Plaintiffs request this court to enter judgment against Defendant Miller for compensatory damages, interest and costs of suit, including reasonable attorney's fees.

## COUNT II — CONVERSION

### Plaintiff BPB against Defendant Miller

23.    The Plaintiffs incorporate the allegations contained in Paragraphs 1 - 22 as if originally stated herein.

24.    Upon termination of the underlying contract, BPB was entitled to immediate possession of the Liquor License.

4

25.    By crossing out "BPB" and "Munchies" from the license renewal application and writing in his own name, and by his continuing refusal to return the Liquor License to BPB, Miller has exercised dominion over the Liquor License.

26.    Miller's conversion of the Liquor License caused disruption to the continued business of selling Munchies', and has depressed the commercial value of the property.

27.    BPB was damaged by miller's conversion of the Liquor License.

WHEREFORE, the Plaintiffs, Homebase Properties, LLC and BPB, LLC, request this court to enter judgment against Defendant Miller for compensatory and special damages, interest and costs of suit, including reasonable attorney's fees.

## COUNT III — VIOLATION OF G.L. C. 93A, §11

### Unfair and Deceptive Acts or Practices

28.    The Plaintiffs incorporate the allegations contained in Paragraphs 1 – 27 as if originally stated herein.

29.    Miller engaged in trade or commerce within the Commonwealth through his contracting to purchase Munchies' for a commercial purpose.

30.    Miller's failure to release the deposit money held in escrow following his breach of the Purchase and Sale Agreement constituted an unfair and deceptive act or practice in the conduct of trade or commerce.

31.    Miller's refusal to return the Liquor License to its rightful holder upon termination of the underlying contract constituted an unfair and deceptive act or practice in the conduct of trade or commerce.

32.    Miller's wrongful conversion of the Liquor License and subsequent threat to file suit if Plaintiffs would not meet his demand of selling the property for $62,000 less than the

contracted price constituted an unfair and deceptive act or practice in the conduct of trade or commerce.

33.     Homebase and BPB have suffered monetary damages due to Miller's unfair and deceptive acts or practices.

WHEREFORE, the Plaintiffs, Homebase Properties, LLC and BPB, LLC, request this court to:  1) enter judgment for Plaintiffs against Defendant Miller; 2) enjoin Defendant Miller to take the required steps to return the Liquor License to BPB, LLC; 3) enjoin Defendant to instruct RE/MAX to release the deposit to Plaintiffs; 4) award damages to Plaintiffs in the amount determined by the court; 5) treble such amount as provided by G.L. c. 93A, § 11; 6) award interest, costs and attorney's fees; and 7) award such other relief as the court deems just and proper.

## COUNT IV — SPECIFIC PERFORMANCE

34.     The Plaintiffs incorporate the allegations contained in Paragraphs 1 – 33 as if originally stated herein.

35.     At the time set for performance by the parties, Plaintiffs were prepared, ready and willing to sell Munchies' for the price stated in the Purchase and Sale Agreement.

36.     Plaintiffs Homebase and BPB changed their positions in reasonable reliance on the contract.

37.     Miller failed to perform on the closing date, leaving Plaintiffs with undesired property.

WHEREFORE, the Plaintiffs request this court to enjoin Miller to specifically perform under the terms of the Agreement, that is, to purchase Munchies' for the originally contracted price.

## COUNT V — ACTION PURSUANT TO M.G.L. C. 214, § 3

38.    The Plaintiffs incorporate the allegations contained in Paragraphs 1 - 37 as if originally stated herein.

39.    Pursuant to M.G.L. c. 214, § 3, the Plaintiffs hereby request redelivery of goods or chattels taken or detained from them, more particularly the liquor license now held by the Defendant.

WHEREFORE, the Plaintiffs request the court to issue an order ordering the Defendant to take all necessary steps to return the Liquor License to Plaintiff, BPB, LLC.

## DEMAND FOR JURY TRIAL OF ALL ISSUES

The Plaintiffs, BPB, LLC and HOMEBASE PROPERTIES, LLC d/b/a Munchies', in the above-entitled action, demand a trial by jury of all issues.

Respectfully submitted,

BPB, LLC and HOMEBASE PROPERTIES, LLC
d/b/a Munchies'

Plaintiffs

By Their Attorney

Dated:  January 28, 2004

DAVID R. CIANFLONE, Esquire (BBO #542152)
Cianflone & Cianflone, P.C.
59 Bartlett Avenue
Pittsfield, MA  01201
(413) 447-7366

7

**PURCHASE AND SALE AGREEMENT**

▶ **1. PARTIES**

**SELLER**                                                    **BUYER**

Name(s): _Home base properties LLC_          _Joseph Miller_

Address: _1525 West Housatonic St_           _____

_Pittsfield Ma._                              _____

▶ **2. DESCRIPTION:** Subject to the terms and conditions hereinafter set forth, the SELLER agrees to sell and the BUYER agrees to buy the following premises: SELLER'S real property located at _1525 West Housatonic St. Pittsfield_ as more particularly described in a deed dated ____/___/____ recorded in the _Central_ Berkshire County Registry of Deeds in Book _____ Page _____, or Land Court Certificate # _____ (Assessor's Map # _____ Section # _____ Lot # _____ (the "Premises").

▶ **3. PURCHASE PRICE:** For the Premises, BUYER shall pay the sum of ......................................................... $ _212,500.00_
(the "Purchase Price") of which
has been paid this day as the initial deposit and ...................................................................................... $ _1,000.00_
will be paid within _10_ days as an additional deposit and balance of .......................................................... $ _15,500.00_
is to be paid in cash, wired funds, or by certified or bank check at the Closing. .............................................. $ _196,500.00_

**3.1 Escrow:** All deposits are to be held by the Listing Broker _RE/MAX Integrity Realtor_ ("Escrow Agent") in a non-interest bearing escrow account, unless otherwise specified herein.

▶ **4. CONTINGENCY TERMS:** The following terms and dates apply to paragraphs 5, 6 and 7 as the case may be:

**4.1 Mortgage Terms:** Amount _75%_ , Rate: _Prev_ . (Variable) Fixed, Points: _0_ , Years: _20_

**4.2 Mortgage Application Date:** ......................................................................... within _7_ days of signed acceptance by SELLER

**4.3 Mortgage Contingency Date:** ....................................................................... within _40_ days of signed acceptance by SELLER

**4.4 Inspection Contingency Date:** ...................................................................... within _10_ days of signed acceptance by SELLER

**4.5 Septic System Inspection Date: (if applicable)** ............................................ within _N/A_ days of signed acceptance by SELLER

**5. MORTGAGE CONTINGENCY:** The BUYER'S obligations under this Agreement are contingent upon BUYER'S obtaining a written commitment letter from a conventional mortgage lender for a loan consistent with the contingency term used by the BUYER in purchasing the premises. Should the BUYER be unable to obtain such a commitment letter despite diligent efforts, BUYER may cancel this Agreement by written notice received by the Listing Broker or Seller's Attorney, no later than 5:00 p.m. on the Mortgage Contingency Date, whereupon all obligations of the parties under this Agreement shall cease and BUYER'S deposits shall be promptly returned in full. BUYER'S failure to (a) give such written notice or (b) make a good faith mortgage application by the Mortgage Application Date shall be a waiver of the BUYER'S right to cancel under this Paragraph. If the BUYER cancels the agreement, BUYER shall attach a copy of the mortgage denial to Buyer's cancellation notice.

**6. INSPECTION CONTINGENCY:** The BUYER'S obligations hereunder are contingent upon BUYER'S receipt, prior to 5:00 p.m. on the Inspection Contingency Date, of written home inspection reports on the Premises satisfactory to the BUYER. Such reports may, at Buyer's option and expense, including but not limited to: Inspections for structural and mechanical matters, pests, including wood-boring insects, lead paint, asbestos, UFFI, radon gas, other hazardous substances, underground tanks, septic system, well water and environmental conditions. Should the results of any such test be unsatisfactory to BUYER, BUYER may cancel this Agreement by written notice received by the Listing Broker or Seller's Attorney no later than 5:00 p.m. on the Inspection Contingency Date, whereupon all obligations of the parties shall cease and BUYER'S deposits shall be promptly returned in full. BUYER'S failure to give such notice shall be a waiver of BUYER'S right to cancel under this Paragraph. The BUYER and Buyer's consultants shall have the right of access to the Premises for the purpose of conducting a home inspection, at reasonable times, upon twenty-four (24) hours advance notice to the Seller's Agent. In consideration of BUYER'S right to inspect and terminate, Buyer acknowledges that by accepting this deed Buyer accepts the condition of the Premises and releases the Seller, Seller's Agents and Buyer's Agents (which include the Selling and Listing Brokers), from any and all liability relating to any defects in the Premises including, without limitation, water seepage from any source.

▶ **7. SEPTIC SYSTEM:** The SELLER represents that the Premises is /is not *See spec. cond.* (delete one) connected to a municipal sewer system. If the premises is not connected to a municipal sewer system, SELLER represents that the Premise is served by a septic system located entirely within the boundaries of the Premises, to the best of their knowledge. (See attached Septic System Addendum [Title 5]) The SELLER shall engage a licensed Septic Inspector to perform a System Inspection and to issue a Septic System Report (the "Report") and deliver the Report to the Buyer on or before the Septic System Inspection Date as defined in paragraph 4.5. Should the Report indicate that the system is a "failed system" as defined by Title 5 of the State Environmental Code (310 CMR 15.301), the BUYER may, within 3 days of receipt of report, cancel this Agreement, and all deposits shall be returned to the BUYER.

▶ **8. CLOSING DATE:** The Deed is to be delivered and the Purchase Price paid on _7/1/03_ at 2:00 p.m. (the "Closing Date") at the appropriate Registry of Deeds or such other location within the county in which the Premises is located, as specified by BUYER.

Seller's Initials _FRP  DB_                              Buyer's Initials _HM_
_FRP  DCB_

MULTIPLE LISTING SERVICE OF THE BERKSHIRE COUNTY BOARD OF REALTORS®, INC.

- 1 of 4 -

**10. SURVEY:** SELLER represents that (no) (delete if appropriate) new boundaries are being created by the sale of the Premises. If new boundaries are being created, SELLER shall deliver to BUYER at the Closing a survey of the Premises, in recordable form. The SELLER shall pay for the preparation and recording of the survey, unless otherwise provided herein.

► **11. FIXTURES:** Included in this sale as part of the Premises, unless expressly excluded, are the usual fixtures belonging to SELLER and used in connection therewith including but not limited to, if any, furnaces, heaters, oil and gas burners and fixtures appurtenant thereto, built-in ranges, dishwashers and disposals, hot water heaters (if not rented), mantels, electric and other lighting fixtures, chandeliers, venetian blinds and window shades, attached mirrors, automatic door openers (with remote controls), installed air conditioners, wall brackets and hangers, built-in book cases and shelving, all installed stair carpeting and wall to wall carpeting, drapery rods, curtain rods, plumbing and electrical covers, screens, screen doors, storm and other detached windows and doors, blinds, awnings, bathroom fixtures, towel bars, medicine cabinets, radio and television antennas, satellite dishes, fences, gates, hardy shrubs, and fire and burglar alarm systems. The following additional personal property is included: + See

_attached list in Spec. Cond._____

Excluded items: _____

**12. ADJUSTMENTS:** Current real estate taxes, water rates, sewer use charges and fuel are to be apportioned as of the Closing Date. Rents are to be apportioned only for the month in which the closing occurs and only when collected by either party. Unpaid rents due SELLER from months prior to the month of the Closing Date, shall be the responsibility of the SELLER to collect. If the real estate tax rate is not set as of the Closing Date, the apportionment of real estate taxes shall be made on the basis of the tax assessed for the most recent preceding year, with a readjustment at the request of either party, when the amount of the current year's tax is set. If the amount of the tax is reduced by abatement, the rebate, less the reasonable cost of obtaining it, shall be apportioned between the parties.

► **13. TITLE:** The Premises shall be conveyed by a good and sufficient quitclaim deed unless otherwise specified herein (accompanied by a Certificate of Title, if registered), conveying a good, clear record, marketable and insurable title, free of all encumbrances and exceptions, except:
   a) Real Estate Taxes assessed or to be assessed on the Premises to the extent that such taxes then are not yet due and payable.
   b) Betterment assessments, if any, which are not a recorded lien on the premises, as of the dated of this Agreement.
   c) Federal, state, and local laws, ordinances, by-laws, and rules regulating the use of land, particularly environmental, building, zoning, health, rent control, and condominium conversion laws, if any, applicable as of the date of this Agreement, provided that as of the Closing Date, the Premises may be used as of right for single family residential use or, if the Premises is/is not a single family residence, the Premises may be used as of right for _____
   d) Existing rights, if any, in party or partition walls; and
   e) Utility easements in the adjoining ways.

**14. USE OF PROCEEDS TO CLEAR TITLE:** To enable SELLER to make conveyance as herein provided, the SELLER may at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, all instruments so procured to be recorded simultaneously with the delivery of said deed or at such later time as shall be reasonably acceptable to BUYER, and provided further, with respect to discharges or mortgages from insurance companies, banks and credit unions, such discharges may be recorded within a reasonable time after the recording of the deed.

**15. EXTENSION:** If, after a reasonable and diligent effort, SELLER is unable to convey title or deliver possession of the Premises as required hereunder, upon notice by either party, prior to the Closing Date, this Agreement shall be automatically extended for 30 days (or if Buyer's mortgage commitment sooner expires to a date one business day before the expiration of such commitment). Seller shall remove all mortgages, attachments and other encumbrances incurred or assumed by SELLER which secure the payment of money, provided the total amount thereof does not exceed the Purchase Price, and SELLER shall use reasonable and diligent efforts to remove other defects in title, or to deliver possession as provided herein. or to make the Premises conform to the provisions hereof. At the end of the extended period, if all such defects have not been removed, or the SELLER is unable to deliver possession, or the Premises do not conform with the requirements of this Agreement, BUYER may elect to terminate this Agreement and to receive back all deposits, upon receipt of which all obligations of the parties hereto shall cease.

**16. STANDARDS:** Any title matter or practice arising under or relating to this Agreement which is the subject of a Title Standard or a Practice Standard of the Massachusetts Conveyancers Association shall be governed by said Standard to the extent applicable.

► **17. WATER:** SELLER represents that the Premises **is**/ **is not** (delete one) served by a municipal water system. If the Premises is not served by a municipal water system, SELLER represents that the Premises is served by either (i) **a well located entirely within the boundaries of the Premises and contains no defects known to SELLER**, (ii) **a private water company**, or (iii) **see special conditions, paragraph 36** (delete inappropriate phrases).

► **18. MASS. UFFI LAW:** The SELLER represents and warrants that Urea Formaldehyde Foam Insulation (UFFI) **is**/ **is not**/ once was (delete inappropriate words) present in the Premises and that UFFI has been declared by the Massachusetts Department of Public Health (DPH) to be a banned substance which may cause personal injury. If UFFI is or once was present in the Premises, BUYER acknowledges receipt of Mass. Disclosure Statement with a copy of the air quality test in possession of the SELLER, which is attached hereto and incorporated herein.

**19. LEAD PAINT LAW:** BUYER acknowledges that under Massachusetts Law, on homes constructed prior to 1978, and whenever a child under six (6) years of age resides in any premises in which paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said material so as to make it inaccessible to children under six (6) years of age. The BUYER further acknowledges that, prior to the signing of this Agreement, the SELLER and Broker(s) have (a) provided to the BUYER the standard notification form from the Massachusetts Department of Public Health concerning lead paint, the certificate for which BUYER has signed, which is attached hereto; (b) informed the BUYER of the availability of inspections for dangerous levels of lead; and (c) verbally informed the BUYER of the possible presence of dangerous levels of lead and the provisions of the lead paint law and regulations, found in 105 CMR 460.100D. Notwithstanding, SELLER is under no obligation to the BUYER to remove lead paint, which may be present in the Premises.

Seller's Initials _____    Buyer's Initials _____

**21. RADON GAS:** Radon gas is a radioactive gas, which occurs naturally in certain areas and may accumulate in some buildings in a high enough concentration to be a potential health hazard.

► **22. UNDERGROUND STORAGE TANKS:** The parties acknowledge that the Massachusetts Board of Fire Prevention has issued regulations governing the maintenance, repair, and removal of underground storage tanks to prevent and detect leakage of tank contents into surrounding soil and water supplies. The SELLER hereby discloses that to the best of Seller's knowledge, there **are / are not** (delete one) one or more underground storage tank(s) at the Premises. If there are one or more underground tanks at the Premises, the SELLER further discloses that the tanks **have** have not (delete one) been used within the past six (6) months exclusively for the storage of fuel oil for consumption of the Premises and to the best of the SELLER's knowledge there has been no release or leakage of oil from such tank(s). If the Premises is not in compliance with 527 CMR 9.00 et.seq. and BUYER does not cancel this Agreement, pursuant to paragraph 6, BUYER shall be obligated to purchase the Premises and shall be deemed to have assumed the obligation to bring the Premises into compliance with 527 CMR 9.00 et. seq.

**23. CONDITION OF PREMISES AT CLOSING:** Upon delivery of the Deed, the Premises and all appliances therein and utilities serving the same shall be in their present condition, reasonable use and wear of same excepted. The Premises is to be left broom clean and all personal property and rubbish removed. With respect thereto, BUYER shall have the right to walk-through the Premises within twenty-four hours prior to the closing and if the sale is completed subsequent to said walk-through or if the walk-through is waived by BUYER, the foregoing condition of the Premises shall, as between the BUYER and SELLER and their representatives (if applicable), be conclusively presumed to be acceptable to BUYER regardless of condition.

**24. NOMINEE:** BUYER may require the conveyance to be made to another person, persons, or entity ("Nominee"), upon notification in writing delivered to SELLER at least five days prior to the Date of Closing. The appointment of a Nominee shall not relieve BUYER of any obligation hereunder. Any Note or mortgage or other document to be delivered from BUYER to SELLER shall be executed by or unconditionally guaranteed by BUYER, unless otherwise specified herein.

**25. CLOSING:** Simultaneously with the delivery of the deed, SELLER shall execute and deliver:

a) Smoke Detector Certificate of Compliance;
b) Wood Stove permit, where applicable
c) Affidavits and indemnities with respect to parties in possession and mechanic's liens to induce buyer's title insurance company to issue lender's and owner's policies of title insurance without exception for those matters;
d) A bill of sale for all personal property included as part of the sale, if requested by the BUYER.
e) In the case of new construction, a Certificate of Occupancy and an assignment of any and all builder's, Sellers, or manufacturer's warranties on the Premises or on any appliances or other property included in the sale.
f) FNMA Vendor's affidavit FNMA 1099;
g) An affidavit, satisfying the requirements of Section 1445 of the Internal Revenue Code and regulation issued thereunder, which states, under penalty of perjury, the seller's United States taxpayer identification number, that the SELLER is not a foreign person, and the seller's address (the "1445 Affidavit");
h) Internal Revenue Service Form W-8 or Form W-9, as applicable, with seller's tax identification number, and an affidavit furnishing the information required for the filing of Form 1099S with the Internal Revenue Service and stating SELLER is not subject to back-up withholding.

**26. RISK OF LOSS-INSURANCE AND DAMAGE PRIOR TO CLOSING:** Prior to the delivery of the Deed, the risk of loss shall be on the SELLER. SELLER shall continue to carry the fire and extended coverage insurance presently maintained on the buildings on the Premises (or, upon the written request of the BUYER, and at the buyer's expense, in such greater amount as BUYER may reasonably request). If the Premises is damaged by fire or other casualty prior to the Closing Date, and SELLER has not restored the Premises to their former condition, the BUYER has the option to take an assignment of SELLER'S insurance proceeds or terminate this Agreement. If BUYER elects to purchase, SELLER shall assign all insurance proceeds to BUYER and the Purchase Price shall be reduced by:

a) the net amount of any insurance proceeds which a mortgagee has applied to the mortgage debt, less any amount reasonable expended by SELLER for partial renovation.
b) the amount of any insurance proceeds received by SELLER; and
c) any deductible amount under SELLER's insurance policy. SELLER will credit BUYER the amount of the deductible toward purchase price.

**27. ACCEPTANCE OF DEED:** Acceptance of the deed by BUYER shall be a full performance and shall discharge every agreement and obligation herein except any agreements which by their terms are to be performed after the Closing. THE BUYER FURTHER ACKNOWLEDGES THAT THE BUYER IS PURCHASING THE PREMISES 'AS IS' and BUYER has not relied upon any statements or representations, oral or written, regarding the condition or value, present or future, of the Premises made either by the SELLER or the Seller's Agents, which are not otherwise contained in this Agreement and that the Seller's Agents are acting exclusively upon behalf of the SELLER. All oral or written representations between the parties are merged herein. BUYER further acknowledges it is the BUYER'S responsibility prior to closing to obtain any and all governmental permits for any intended use of the Premises including, but not limited to, health or environmental department, planning or zoning board approvals. SELLER and SELLER'S representative(s) make no representations as to the adequacy of the Premises being conveyed for BUYER'S intended purposes, disclosed or undisclosed.

**28. MERGER:** The parties agree that this Agreement contains all of the terms and conditions of this transaction. It is mutually agreed that any oral or prior written representation made by either party prior to the execution of this Agreement is null and void. This Agreement shall be construed as a legal contract under seal and is binding upon the parties, and their respective heirs, successors, and assigns.

**29. SURVIVAL:** Notwithstanding any presumptions to the contrary, all covenants, conditions, and representations contained in this Agreement, which by their nature, implicitly or explicitly, involve performance in any particular manner after the Closing and delivery of the deed, or which cannot be ascertained to have been full performed until after the Closing and delivery of the deed, shall survive the Closing.

**30. TERMINATION:** In the event the BUYER terminates this Contract in accordance with the provisions herein relating to "Mortgage Contingency," "Risk of Loss Insurance," "Inspection Contingency," "Septic System Inspection," default by SELLER, or the failure of any contingency shown under special conditions, the Escrow Agent shall forthwith refund such deposit money together with accrued interest thereon (if applicable) to the BUYER.

Seller's Initials _____ **Buyer's Initials** _____

damages, which shall be Seller's exclusive rer    in law or in equity. The deposits shall be applied to    payment of said liquidated damages.

**32. RELEASE OF DEPOSITS:** The deposits (which term shall include all interest earned, if any) made hereunder shall be held in escrow subject to the terms of this Agreement and shall be duly accounted for at the time for performance of this Agreement. The deposits may not be released from escrow without the assent of both BUYER and SELLER. The recording of the deed to the Premises shall constitute such assent. In the event of any disagreement, the Escrow Agent shall retain the deposits pending written instructions by both the SELLER and BUYER, or by a court of competent jurisdiction. So long as Escrow Agent served in good faith, BUYER and SELLER each agrees to hold harmless Escrow Agent from damages losses, or expenses, arising out of this Agreement or any action or failure to act, including reasonable attorney's fees, related thereto. BUYER and SELLER acknowledge that the Escrow Agent may be counsel or fiduciary to one of the parties and agree that Escrow Agent may continue to act as such counsel or fiduciary notwithstanding any dispute or litigation arising with respect to the deposits or Escrow Agent's duties.

**33. AGREEMENT TO MEDIATE DISPUTE OR CLAIMS:** Any dispute or claim arising out of or relating to this Agreement, the breach of this Agreement, or the brokerage services provided in relation to this Agreement shall be submitted to mediation in accordance with the Rules and Procedures of the Homesellers / Homebuyers Dispute Resolution System ("DRS"). Disputes and claims shall specifically include, without limitation, representations made by the SELLER, the BUYER, or the Broker(s) in connection with the sale, purchase, finance, condition, or other aspect of the Premises to which this Agreement pertains, including without limitation, allegations of concealment, misrepresentation, negligence and / or fraud. The mediation conference shall be held within 30 days from the date on which the mediator receives notice of the dispute. If the parties reach a settlement, they shall both sign a settlement agreement. If the parties cannot reach a mutually agreeable settlement, they may arbitrate or litigate the dispute without regard to the mediation procedure. The filing of a judicial action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies shall not constitute a waiver of the right to mediate under this paragraph, nor shall such filing constitute a breach of the duty to mediate. The provisions of this paragraph shall survive the closing.

**34. GOVERNING LAW:** This Agreement is to be governed by the substantive laws of the Commonwealth of Massachusetts.

**35. AGENCY:** BUYER and SELLER acknowledge that they have been provided with a completed copy of the 'Mandatory Agency Disclosure–Agency Relationship' form, as mandated by the Massachusetts Board of Registration of Real Estate Brokers and Salespersons.

**36. SPECIAL CONDITIONS / ADDENDA:** _Contingent upon buyer hook-up to Pittsfield sewer. Contingent p liquor license transfer by 8/15/03. Contingent upon an equipment list being agreed to by seller + buyer within 10 days of acceptance._

**37. TERMINATION OF OFFER:** This offer is subject to acceptance by SELLER by _5 P.M. 5/07/03_ after which time this offer is void and terminated, and deposit paid by BUYER shall be returned.

**38. TIME:** Time is of the essence of all provisions of this agreement, unless otherwise specified elsewhere in this agreement. Any reference to "days" shall mean calendar days and is not intended to mean only business days.

**39. THIS IS A LEGALLY BINDING CONTRACT. IF NOT UNDERSTOOD, SEEK LEGAL COUNSEL:** Executed under seal by the Parties hereto as of the latter of all dates set forth below, and incorporating all provisions on pages 1 through 4, together with referenced additions, if any.

| | | |
|---|---|---|
| _Joseph Brown_   5-7-03 | | X _Tony Miller_   5/6/0 |
| _Frank R Pena_   DDB 5-7-03 | | |
| **SELLER**   **DATE** | | **BUYER**   **DATE** |
| _Dennis C Barry_   DDB 5-7-03 | | |
| **SELLER**   **DATE** | | **BUYER**   **DATE** |
| _Campoli & Campoli_ | | _mike McDonald_ |
| **SELLER's Attorney's Name** | | **BUYER's Attorney's Name** |
| _Frank R Pena_   5-7-03 | | |
| _DDCR_   5/7/03 | | |

**MULTIPLE LISTING SERVICE OF THE BERKSHIRE COUNTY BOARD OF REALTORS® INC.**

# MASSACHUSETTS BOARD OF REGISTRATION OF REAL ESTATE BROKERS AND SALESPERSONS
## MANDATORY AGENCY DISCLOSURE - AGENCY RELATIONSHIP

The purpose of this disclosure is to enable you to make informed choices before working with a real estate licensee. It must be provided at the first personal meeting that you have with an agent to discuss a specific property. THIS IS NOT A CONTRACT. It is a disclosure notice for your information and protection. BE SURE TO READ THE DESCRIPTIONS OF THE DIFFERENT TYPES OF AGENCY REPRESENTATION ON THE OTHER SIDE OF THIS DISCLOSURE.

### CONSUMER INFORMATION

1. Whether you are the buyer or the seller you can choose to have the advice, assistance and representation of your own agent. Do not assume that a broker is acting on your behalf unless you have contracted with that broker to represent you.

2. All real estate licensees must, by law, present properties honestly and accurately.

3. If you are a seller you may authorize your listing agent to cooperate with agents from other firms to help sell your property. These cooperating agents may be subagents who work for the seller or buyer's agents.

4. If you are the buyer you have the option of working with seller's or buyer's agents. This decision will depend on the types of services you want from a real estate agent. A buyer should tell seller's agents, including subagents, only what he/she would tell the seller directly.

### CONSUMER RESPONSIBILITY

The duties of a real estate licensee do not relieve the consumer of the responsibility to protect his/her own interest. Consumers with questions on whether and how real estate agents share fees should pose them to the agent. If you need advice for legal, tax, insurance or other matters it is your responsibility to consult a professional in those areas.

---

### ACKNOWLEDGEMENT

I have provided this disclosure form to _Joseph Miller_

I have informed the above named consumer that I am a: (check one)

☒ Seller's Agent          ☐ Buyer's Agent

_____      _134877_      _5_   _06_, 20 _03_
(Signature of Real Estate Agent)     (License Number)   (Month)  (Day)   (Year)

I have read this agency disclosure form IN ITS ENTIRETY ON BOTH SIDES. I understand that this form is for agency disclosure AND NOT A CONTRACT. It was provided to me by the agent named above.

_____      _05_  _06_, 20 _03_    Check Here: ☒ Buyer
(Signature of Consumer/s)       (Month)  (Day)  (Year)                  ☐ Seller

☐ As a Consumer I recognize that I need not select any agency representation at this time. Therefore, I decline to sign this disclosure. Any additional reason for declining to sign:

---

(PRINT NAME OF CONSUMER AND REASON, IF ANY)

Form No. 705 (Rev.  2/99)





MASSFORMS
Statewide Standard Real Estate Forms

## ADDENDUM TO PURCHASE AND SALE AGREEMENT

The parties, HOMEBASE PROPERTIES, LLC, and JOSEPH J. MILLER, hereby agree that given the fact the liquor license associated with the premises located at 1525 West Housatonic Street, Pittsfield, Massachusetts, is owned by a separate corporation, BPB, LLC, said corporation shall be a party to this Purchase and Sales Agreement.

Executed on this 28th day of August, 2003.


J. Joseph Breault - Seller                         Joseph J. Miller - Buyer


Frank R. Penna - Seller


Dennis C. Barry - Seller

## EXTENSION AGREEMENT

We, the undersigned attorneys for the parties, BPB, LLC, HOMEBASE PROPERTIES, LLC, and JOSEPH J. MILLER, hereby agree that an extension shall be given with regard to the property in question, 1525 West Housatonic Street, Pittsfield, Massachusetts, and a closing regarding said property will commence on or before October 15, 2003.

The purpose of this extension is to allow adequate time for the approval of the liquor license transfer between the holder of the liquor license, BPB, LLC, and JOSEPH J. MILLER d/b/a/ NIRVANA.

The parties further agree that in the event that the City of Pittsfield or the Alcoholic Beverages Control Commission fails to approve or deny the liquor license transfer on or before October 15, 2003, further reasonable extensions will be made to accommodate the successful transfer of the liquor license.

All terms and conditions of the Purchase and Sale Agreement shall remain in affect.

Executed on this 28th day of August, 2003.


Joseph Breault - Seller                          Joseph J. Miller - Buyer


Frank R. Penna - Seller


Dennis C. Barry - Seller

# ADDENDUM TO PURCHASE AND SALE AGREEMENT
## DATED MAY 7, 2003 AND
## AMENDMENT DATED MAY 12, 2003
## BETWEEN
## JOSEPH MILLER (BUYER)
## AND HOME BASE PROPERTIES, LLC
## and BPB, LLC, D/B/A MUNCHIES(SELLERS)
## 1525 WEST HOUSATONIC STREET,
## PITTSFIELD, MA

The parties agree that the Closing date scheduled for October 15, 2003 shall be changed to October 24, 2003.

and all other conditions of the agreements remain in full force.

| | |
|---|---|
| _____ | _____ |
| J. Joseph Breault        (Date) | Joseph Miller        (Date) |

_____
Frank R. Penna        (Date)

_____
Dennis C. Barry        (Date)

RESUBMITTED

__097400076__                       __PITTSFIELD__              __SEPT. 16, 2003__
License Number                     City/Town                   Date

Type of Transaction (please check all relevant transactions)

( ) New License            ( ) New Officer/Director( ) Pledge of License
(X) Transfer of License    ( ) Change of Location  ( ) Pledge of Stock
( ) Change of Manager      ( ) Alter Premises       ( ) Other_____
( ) Transfer of Stock                                      (specify)

__JOSEPH J MILLER__
Name of Licensee                              __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__
                                              FID of Licensee
__D/B/A NIRVANA__
                                              JOSEPH J MILLER
DBA                                           Manager

__1525 WEST HOUSATONIC STREET__        01201
Address: Number         Street                     Zip Code

__ANNUAL__                __ALL-ALCOHOLIC__              __RESTAURANT__
Annual or Seasonal        Category: All Alcohol,        Type: Restaurant
                          Wine and Malt, Wine only      Club, Package store,
                          Malt Only                     etc.

Description of Licensed Premises:

TWO STORY WOOD STRUCTURE. FIRST FLOOR IS FOR GENERAL USE ONLY, ONE FRONT
ENTRANCE/EXIT, ONE SIDE EXIT AND ONE REAR EXIT

Application was filed __JUNE 2, 2003__   Advertised __JULY 10, 2003__
                      DATE/TIME 3:05 PM                DATE and PUBLICATION
Person to contact regarding this transaction:    Abutters Notified X__YES ____NO

| Name: | ELIZABETH J. QUIGLEY, ESQ. | THOMAS A. KENEFICK III, ESQ |
| Address: | 27 HENRY AVENUE, PITTSFIELD MA 01201 | 73 CHESTNUT ST, SPRINGFIELD MA 01103 |
| Phone number: | ( 413 ) 499-5476 | (413) 734-7000 |

Remarks: RESUBMITTED. TRANSFER OF LICENSE FROM BPB, LLC, D/B/A MUNCHIES,

1525 WEST HOUSATONIC STREET, FRANK PENNA, JR., MGR.   OCT 15 2003

The Local Licensing Authority:        Alcoholic Beverages Control Commission

By:                                   Peter J. Connelly
                                      Executive Secretary

                              Remarks:

APPROVED                                                        9

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT
SUPERIOR COURT DEPARTMENT

BERKSHIRE, SS

CIVIL ACTION NO. __04-036__

```
                                    )
BPB, LLC and HOMEBASE               )
PROPERTIES, LLC d/b/a Munchies',    )
                                    )
               Plaintiffs.          )          DEMAND FOR JURY
                                    )          TRIAL OF ALL ISSUES
v.                                  )
                                    )
JOSEPH J. MILLER,                   )
                                    )
               Defendant.           )
                                    )
```

TO THE CLERK OF THE ABOVE-NAMED COURT:

The Plaintiffs, BPB, LLC and HOMEBASE PROPERTIES, LLC d/b/a Munchies', in the above-entitled action, demand a trial by jury of all issues.

Respectfully submitted,

BPB, LLC and HOMEBASE PROPERTIES, LLC
d/b/a Munchies'

Plaintiffs

By Their Attorney

Dated:  January 28, 2004

DAVID R. CIANFLONE, Esquire (BBO #542152)
Cianflone & Cianflone, P.C.
59 Bartlett Avenue
Pittsfield, MA  01201
(413) 447-7366

**A True Copy**

Attest: _____

Clerk

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT
SUPERIOR COURT DEPARTMENT

BERKSHIRE, SS.                                    CIVIL ACTION NO. ___04-036___

```
                              )
BPB, LLC and HOMEBASE         )
PROPERTIES, LLC d/b/a Munchies', )
                              )
          Plaintiffs.         )
                              )
v.                            )
                              )
JOSEPH J. MILLER,             )
                              )
          Defendant.          )
                              )
```

## UNIFORM COUNSEL CERTIFICATION FOR CIVIL CASES

I am the attorney of record for BPB, LLC and HOMEBASE PROPERTIES, LLC d/b/a Munchies', the Plaintiff in the above-entitled matter.

In accordance with Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) which states in part: "… Attorneys shall: provide their clients with this information about court-connected dispute resolution services; discuss with their clients the advantages and disadvantages of the various methods of dispute resolution; and certify their compliance with this requirement on the civil cover sheet or its equivalent…,"

I hereby certify that I have complied with this requirement.

DATED:  January 28, 2004

_____
Signature of Attorney of Record

David R. Cianflone
_____
Print Name

BBO #542152
_____

*This certification may be filed by counsel as is, or this text may be incorporated into a form currently in use at the initiation of a case (e.g., civil cover sheet, appearance form, etc.), as determined to be appropriate in each department of the Trial Court. Plaintiff's counsel shall file this document at the time his/her initial pleading is filed. All other counsel shall file it within thirty (30) days of his/her initial entry into the case whether by answer, motion, appearance slip or other pleading.*

A True Copy

Attest: _____  Clerk