UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

FILED
CLERK'S OFFICE

19 A 10 01

U.S. DISTRICT COURT
DISTRICT OF MASS

| | |
|---|---|
| BPB, LLC and HOMEBASE PROPERTIES, LLC d/b/a Munchies,<br>Plaintiffs | )<br>)<br>)<br>) |
| v. | ) |
| JOSEPH J. MILLER,<br>Defendant | )<br>)<br>) Docket No. 04-30021-MAP |
| v. | )<br>) |
| RE/MAX INTEGRITY REALTORS, INC.,<br>Third-Party Defendant | )<br>)<br>) |

## DEFENDANT'S ANSWER, COUNTERCLAIM AND THIRD-PARTY COMPLAINT

NOW COMES defendant Joseph J. Miller (hereinafter "Miller") who hereby answers the complaint of defendants BPB, LLC and Homebase Properties, LLC (hereinafter "BPB" and "Homebase," respectively) as follows:

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted, except insofar as BPB is alleged to have had any interest in the liquor license that forms the subject matter of the complaint subsequent to October 21, 2003.

6. Admitted.

7. Admitted, only insofar as Miller is alleged to have paid the sum of $16,500 to RE/MAX Integrity Realtors, Inc. (hereinafter "RE/MAX").

8. Admitted.

9. Admitted, only insofar as Exhibit B speaks for itself.

10. Admitted.

11. Miller is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 11 and leaves BPB and Homebase to their proof thereof.

12. Denied.

13. Denied.

14. Denied, insofar as Miller is alleged to have breached the Purchase and Sale Agreement.

15. Denied.

16. Denied, except insofar as Exhibit E speaks for itself.

17. Denied, except insofar as Exhibit F speaks for itself.

18. Denied, except insofar as Exhibit G speaks for itself.

## COUNT I

19. Miller incorporates and realleges his answer as to Paragraphs 1 through 18 as if set forth fully herein.

20. Denied.

21. Denied.

22. Denied.

## COUNT II

23. Miller incorporates and realleges his answer as to Paragraphs 1 through 22 as if set forth fully herein.

24. Denied.

25.  Denied, except insofar as Miller is alleged to be the holder of the liquor license.

26.  Denied.

27.  Denied.

## COUNT III

28.  Miller incorporates and realleges his answer as to Paragraphs 1 through 27 as if set forth fully herein.

29.  Miller is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 29 and leaves BPB and Homebase to their proof thereof.

30.  Denied.

31.  Denied.

32.  Denied.

33.  Denied.

## COUNT IV

34.  Miller incorporates and realleges his answer as to Paragraphs 1 through 33 as if set forth fully herein.

35.  Miller is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 35 and leaves BPB and Homebase to their proof thereof.

36.  Miller is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 36 and leaves BPB and Homebase to their proof thereof.

37.  Denied, except insofar as BPB and Homebase allege that the property is undesired by BPB and Homebase.

## COUNT V

38. Miller incorporates and realleges his answer as to Paragraphs 1 through 37 as if set forth fully herein.

39. Miller is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 39 and leaves BPB and Homebase to their proof thereof.

WHEREFORE, Miller requests that the complaint of BPB and Homebase be denied and dismissed.

## AFFIRMATIVE DEFENSES

FIRST: BPB and Homebase have failed to state a claim against Miller upon which relief in the nature of replevin or equitable redelivery can be granted, insofar as Miller's liquor license is not a good or chattel subject to equitable redelivery or replevin within the intendment of Mass. G. L. c.214, §3(1) and Mass. G. L. c.247, §7.

SECOND: BPB and Homebase's request for relief in this Court is not ripe for adjudication, insofar as BPB and Homebase have failed to exhaust their administrative remedies before either the City of Pittsfield Licensing Board or the Commonwealth of Massachusetts Alcoholic Beverages Control Commission

THIRD: BPB and Homebase have failed to state a claim against Miller upon which relief in the nature of replevin or equitable redelivery can be granted insofar as BPB and Homebase have a full and adequate remedy at law for damages as against Miller for any alleged conversion of the liquor license.

FOURTH: BPB and Homebase's request for specific performance is barred by laches.

FIFTH: BPB and Homebase's request for specific performance is barred by unclean hands.

SIXTH: BPB and Homebase have failed to state a claim against Miller upon which relief can be granted pursuant to c.93A, Mass. G.L.

SEVENTH: BPB and Homebase are estopped from any claim of conversion of the liquor license as a result of their voluntary transfer of the license to Miller.

EIGHTH: BPB and Homebase have waived any entitlement to recovery by their own acts and omissions to act in breach of any alleged contract between BPB and Homebase and Miller.

NINTH: BPB and Homebase have failed to state a claim against Miller upon which relief can be granted, insofar as any alleged contract between BPB and Homebase and Miller has failed for want of consideration.

TENTH: BPB and Homebase have failed to state a claim against Miller upon which relief can be granted, insofar as the purpose of any alleged contract between BPB and Homebase and Miller has been frustrated.

ELEVENTH: BPB and Homebase have failed to state a claim against Miller upon which relief can be granted, insofar as performance of any alleged contract between BPB and Homebase and Miller is impossible.

TWELFTH: BPB and Homebase are estopped from recovery by their own acts and omissions to act in breach of any contract between BPB and Homebase and Miller.

THIRTEENTH: BPB and Homebase procured any partial contractual performance by Miller as a result of fraud, and are thus barred from recovery.

FOURTEENTH: BPB and Homebase's claims are barred by reason of the occurrence of supervening facts or events which excuse Miller's performance of the alleged contracts, nonsatisfaction of conditions precedent, and/or termination of the contract.

WHEREFORE, Miller requests that BPB and Homebase take nothing by their complaint.

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT

1. Miller is a resident of the Town of Somers, Connecticut.

2. Homebase is a domestic limited liability company with its principal place of business at 1525 West Housatonic Street in the City of Pittsfield, Massachusetts.

3. BPB is a domestic limited liability company with its principal place of business at 1525 West Housatonic Street in the City of Pittsfield, Massachusetts.

4. Third-party defendant RE/MAX Integrity Realtors, Inc. (hereinafter "RE/MAX") is a domestic business corporation with its principal place of business at 154 Elm Street in the City of Pittsfield, Massachusetts.

5. This is a compulsory counterclaim and a third-party complaint for damages incurred as a result of a breach of contract for the purchase and sale of real estate, and is within the jurisdiction of this Court pursuant to Fed. R. Civ. P. 13(a) and 14(a) and 28 U.S.C. §1367(a).

6. Homebase is the owner of that certain lot or parcel of real estate with all of the improvements thereupon located at 1525 West Housatonic Street in the City of Pittsfield, Massachusetts, and formerly the site of a restaurant known as "Munchies Pub" (hereinafter referred to as "Munchies").

7. At times material hereto prior to November 2003, BPB was the holder of a license for the sale of alcoholic beverages incident to the Munchies' restaurant operations.

8. On or about May 7, 2003, Homebase entered into a purchase and sale agreement (hereinafter "the Agreement") with Miller whereby Homebase agreed to sell to Miller and Miller agreed to purchase the Munchies' restaurant property from Homebase. (*Purchase and Sale Agreement*, dated 5/7/03, attached hereto as Exhibit 1.)

9. Miller's performance under the terms of the Agreement with Homebase was expressly made contingent upon the transfer of Munchies' restaurant liquor license to Miller on or before August 15, 2003.

10. Time was to be of the essence to the performance by Miller and Homebase of the terms of the Agreement.

11. RE/MAX acted as the corporate escrow agent under the terms of the Agreement.

12. At times material hereto in May 2003, Miller paid RE/MAX $16,500 as a deposit on the purchase price due under the terms of the Agreement.

13. On or about August 28, 2003, Miller and Homebase agreed to an addendum to the Agreement whereby BPB was made a party to the Agreement, insofar as BPB was the holder of the Munchies' restaurant liquor license. (*Addendum to Purchase and Sale Agreement*, dated 8/28/03, attached hereto as Exhibit 2.)

14. On or about August 28, 2003, Miller, Homebase and BPB further agreed that the closing date under the Agreement would be extended to October 15, 2003, in order to allow adequate time for BPB to transfer the Munchies' restaurant liquor license to Miller. (*Extension Agreement*, dated 8/28/03, attached hereto as Exhibit 3.)

15. As a result of a protest filed by the Massachusetts Department of Revenue against Homebase and BPB, Miller did not obtain approval of the transfer of the Munchies' liquor license from BPB by October 15, 2003.

16. Homebase did not sell the Munchies restaurant property to Miller by October 15, 2003.

17. Miller, Homebase, and BPB did not agree to any further extensions of the closing date under the Agreement.

18. On or about November 7, 2003, Miller demanded the return of his deposit money under the Agreement from Homebase, BPB and the escrow agent, RE/MAX. (*Donovan & O'Connor, LLP Letter to Campoli & Campoli, P.C.*, dated 11/7/03, attached hereto as Exhibit 4.)

19. Homebase, BPB and RE/MAX have failed or refused to return the deposit money to Miller.

## COUNT I

### Breach of Contract/Liquidated Damages

20. Miller incorporates and realleges the allegations in Paragraphs 1 through 19 as if set forth fully herein.

21. The failure of Miller to timely obtain approval for the transfer of the Munchies' liquor license from BPB on or before the date to which the closing of the Agreement had been extended constitutes a failure of an express condition precedent to Miller's performance under the terms of the Agreement.

22. As a direct and proximate result of the failure of the liquor license transfer contingency, Miller is contractually entitled to a return of his deposit money from Homebase, BPB and RE/MAX as liquidated damages.

23. Homebase, BPB and RE/MAX have failed or refused to repay the deposit money to Miller.

24. As a direct an proximate result of Homebase, BPB and RE/MAX failure or refusal to repay the deposit money to Miller, Miller has suffered economic damage.

WHEREFORE, Miller demands judgment against Homebase, BPB and RE/MAX for compensatory damages, interest and costs of suit, including a reasonable attorney fee.

## COUNT II

### Breach of Contract/Non-Liquidated Damages

25. Miller incorporates and realleges the allegations in Paragraphs 1 through 19 as if set forth fully herein.

26. The failure or refusal of Homebase and BPB to timely obtain a release of the taxing authority's protest against the approval of the transfer of the Munchies' liquor license to Miller, and to timely close under the terms of the Agreement constitutes a breach of the Agreement between Homebase, BPB and Miller.

27. As a direct and proximate result of Homebase and BPB's breach of the Agreement with Miller, Miller has suffered economic injury due to costs sunk by Miller in the entertainment and liquor licensing applications for the Munchies' restaurant property, due to costs incurred by Miller in the development of a business plan for the Munchies' restaurant property, and due to costs incurred by Miller for lost opportunity and lost profit from the purchase of the Munchies' restaurant property, all to Miller's general damage.

WHEREFORE, Miller demands judgment against Homebase and BPB, jointly and severally, for compensatory damages, interest and costs of suit, including a reasonable attorney fee.

## COUNT III

### Unfair or Deceptive Trade Practices and Acts

28. Miller incorporates and realleges the allegations in Paragraphs 1 through 19 as if set forth fully herein.

29. Homebase and BPB are engaged in the conduct of trade or commerce within the intendment of Mass. G. L. c.93A.

30. The failure or refusal of Homebase and BPB to return Miller's deposit money constitute unfair or deceptive acts or practices in the conduct of trade or commerce, as proscribed by Mass. G. L. c.93A, §2(a).

31. The failure or refusal of Homebase and BPB to timely obtain a release of the taxing authority's protest against the approval of the transfer of the Munchies' liquor license to Miller, and to timely close under the terms of the Agreement constitute further unfair or deceptive acts or practices in the conduct of trade or commerce, as proscribed by Mass. G. L. c.93A, §2(a).

32. As a direct and proximate result of Homebase and BPB's unfair or deceptive trade acts and practices in the conduct of the Homebase and BPB's business, Miller has suffered economic injury from the loss of his deposit money, as well as from costs sunk by Miller in the entertainment and liquor licensing applications for the Munchies' restaurant property, from costs incurred by Miller in the development of a business plan for the Munchies' restaurant property, and from costs incurred by Miller for lost opportunity and lost profit from the purchase of the Munchies' restaurant property, all to Miller's general damage.

WHEREFORE, Miller demands judgment against Homebase and BPB, jointly and severally for compensatory damages, trebled pursuant to Mass. G. L. c.93A, §11, as well as interest and costs of suit, including a reasonable attorney fee.

Miller further requests any and all such other relief as this Court deems just and meet.

Miller also demands trial by jury of all issues in each Count so triable at law, pursuant to Fed. R. Civ. P 38.

Dated: February _18_, 2004

THE DEFENDANT

JOSEPH J. MILLER

By his attorneys,

_/s/ Douglas J. Rose_
Douglas J. Rose
BBO No. 629080
For Donovan & O'Connor, LLP
1330 Mass MoCA Way
North Adams, MA 01247
Tel: (413) 663-3200
Fax: (413) 663-7970

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| BPB, LLC and HOMEBASE PROPERTIES, LLC d/b/a "Munchies",<br>  Plaintiffs | )<br>)<br>)<br>) |
| v. | )<br>) |
| JOSEPH J. MILLER,<br>  Defendant | )<br>)    Docket No. 04-30021-MAP<br>) |
| v. | )<br>) |
| RE/MAX INTEGRITY REALTORS, INC.,<br>  Third-Party Defendant | )<br>)<br>) |

## CERTIFICATE OF SERVICE

I, Douglas J. Rose, Esq., do hereby certify that I caused a true copy of the within Answer, Counterclaim and Third-Party Complaint to be delivered by first class U. S. mail, postage prepaid, this __18th__ day of February, 2004 to David R. Cianflone, Esq., 59 Bartlett Avenue, Pittsfield, MA 01201.

_____
Douglas J. Rose

DJR:SLD

EXHIBIT 1

# PURCHASE AND SALE AGREEMENT

**1. PARTIES**

|  | SELLER | BUYER |
|---|---|---|
| Name(s): | Homebase properties LLC | Joseph Miller |
| Address: | 1525 West Housatonic St | |
| | Pittsfield Ma. | |
| | (MUNCHES) | |

**2. DESCRIPTION:** Subject to the terms and conditions hereinafter set forth, the SELLER agrees to sell and the BUYER agrees to buy the following premises: SELLER'S real property located at **1525 West Housatonic St. Pittsfield** as more particularly described in a deed dated __/__/__ recorded in the **Central** Berkshire County Registry of Deeds in Book _____, Page _____, or Land Court Certificate # _____ (Assessor's Map # ____ Section # ____ Lot # ____) (the "Premises").

**3. PURCHASE PRICE:** For the Premises, BUYER shall pay the sum of ............ $ **212,500.⁰⁰**
(the "Purchase Price") of which ............ $ **1,000.⁰⁰**
has been paid this day as the Initial deposit and ............ $ **15,000.⁰⁰**
will be paid within **10** days as an additional deposit and balance of ............ $ **196,500.⁰⁰**
is to be paid in cash, wired funds, or by certified or bank check at the Closing.

**3.1 Escrow:** All deposits are to be held by the Listing Broker **RE/max Integrity Realtors** ("Escrow Agent") in a non-interest bearing escrow account, unless otherwise specified herein.

**4. CONTINGENCY TERMS:** The following terms and dates apply to paragraphs 5, 6 and 7 as the case may be:

4.1 Mortgage Terms: Amount **75%**, Rate: **Prev.**, (Variable)/Fixed, Points: **0**, Years: **20**
4.2 Mortgage Application Date: ............ within **7** days of signed acceptance by SELLER
4.3 Mortgage Contingency Date: ............ within **40** days of signed acceptance by SELLER
4.4 Inspection Contingency Date: ............ within **10** days of signed acceptance by SELLER
4.5 Septic System Inspection Date: (if applicable) ............ within **N.A.** days of signed acceptance by SELLER

**5. MORTGAGE CONTINGENCY:** The BUYER'S obligations under this Agreement are contingent upon BUYER'S obtaining a written commitment letter from a conventional mortgage lender for a loan consistent with the contingency term used by the BUYER in purchasing the premises. Should the BUYER be unable to obtain such a commitment letter despite diligent efforts, BUYER may cancel this Agreement by written notice received by the Listing Broker or Seller's Attorney, no later than 5:00 p.m. on the Mortgage Contingency Date, whereupon all obligations of the parties under this Agreement shall cease and BUYER'S deposits shall be promptly returned in full. BUYER'S failure to (a) give such written notice or (b) make a good faith mortgage application by the Mortgage Application Date shall be a waiver of the BUYER'S right to cancel under this Paragraph. If the BUYER cancels the agreement, BUYER shall attach a copy of the mortgage denial to Buyer's cancellation notice.

**6. INSPECTION CONTINGENCY:** The BUYER'S obligations hereunder are contingent upon BUYER'S receipt, prior to 5:00 p.m. on the Inspection Contingency Date, of written home inspection reports on the Premises satisfactory to the BUYER. Such reports may, at Buyer's option and expense, including but not limited to: inspections for structural and mechanical matters, pests, including wood-boring insects, lead paint, asbestos, UFFI, radon gas, other hazardous substances, underground tanks, septic system, well water and environmental conditions. Should the results of any such test be unsatisfactory to BUYER, BUYER may cancel this Agreement by written notice received by the Listing Broker or Seller's Attorney no later than 5:00 p.m. on the Inspection Contingency Date, whereupon all obligations of the parties shall cease and BUYER'S deposits shall be promptly returned in full. BUYER'S failure to give such notice shall be a waiver of BUYER'S right to cancel under this Paragraph. The BUYER and Buyer's consultants shall have the right of access to the Premises for the purpose of conducting a home inspection, at reasonable times, upon twenty-four (24) hours advance notice to the Seller's Agent. In consideration of BUYER'S right to inspect and terminate, Buyer acknowledges that by accepting the deed Buyer accepts the condition of the Premises and releases the Seller, Seller's Agents and Buyer's Agents (which include the Selling and Listing Brokers), from any and all liability relating to any defects in the Premises including, without limitation, water seepage from any source.

**7. SEPTIC SYSTEM:** * see spec. cond. The SELLER represents that the Premises **Is**/(is not) (delete one) connected to a municipal sewer system. If the premise is not connected to a municipal sewer system, SELLER represents that the Premise is served by a septic system located entirely within the boundaries of the Premises, to the best of their knowledge. (See attached Septic System Addendum [Title 5]) The SELLER shall engage a licensed Septic Inspector to perform a System Inspection and to issue a Septic System Report (the "Report") and deliver the Report to the Buyer on or before the Septic System Inspection Date as defined in paragraph 4.5. Should the Report indicate that the system is a "failed system" as defined by Title 5 of the State Environmental Code (310 CMR 15.301), the BUYER may, within 3 days of receipt of report, cancel this Agreement, and all deposits shall be returned to the BUYER.

**8. CLOSING DATE:** The Deed is to be delivered and the Purchase Price paid on **7/1/03** at 2:00 p.m. (the "Closing Date") at the appropriate Registry of Deeds or such other location within the county in which the Premises is located, as specified by BUYER.

Seller's Initials **WB  FCP  DCB**     Buyer's Initials _____

MULTIPLE LISTING SERVICE OF THE BERKSHIRE COUNTY...

**9. POSSESSION:** Full possession **free of all tenants and occupants** /~~subject to existing tenants~~ (delete one) shall be delivered at the Closing Date. The premises shall be free of encroachments burdening the premises and of improvements that encroach on adjoining Premises, including buildings, septic systems, well and driveway, and has sufficient legal access to a public way.

**10. SURVEY:** SELLER represents that (no) (delete if appropriate) new boundaries are being created by the sale of the Premises. If new boundaries are being created, SELLER shall deliver to BUYER at the Closing a survey of the Premises, in recordable form. The SELLER shall pay for the preparation and recording of the survey, unless otherwise provided herein.

**11. FIXTURES:** Included in this sale as part of the Premises, unless expressly excluded, are the usual fixtures belonging to SELLER and used in connection therewith including but not limited to, if any, furnaces, heaters, oil and gas burners and fixtures appurtenant thereto, built-in dishwashers and disposals, hot water heaters (if not rented), mantels, electric and other lighting fixtures, chandeliers, venetian blinds and window shades, attached mirrors, automatic door openers (with remote controls), installed air conditioners, wall brackets and hangers, built-in bookcases and shelving, all installed stair carpeting and wall to wall carpeting, drapery rods, curtain rods, plumbing and electrical covers, screens, screen doors, storm and other detached windows and doors, blinds, awnings, bathroom fixtures, towel bars, medicine cabinets, radio and television antennas, satellite dishes, fences, gates, hardy shrubs, and fire and burglar alarm systems. The following additional personal property is included: _+ See_
_attached list in Spec. Cond._
Excluded items: _____

**12. ADJUSTMENTS:** Current real estate taxes, water rates, sewer use charges and fuel are to be apportioned as of the Closing Date. Rents are to be apportioned only for the month in which the closing occurs and only when collected by either party. Unpaid rents due SELLER from months prior to the month of the Closing Date, shall be the responsibility of the SELLER to collect. If the real estate tax rate is not set as of the Closing Date, the apportionment of real estate taxes shall be made on the basis of the tax assessed for the most recent preceding year, with a readjustment at the request of either party, when the amount of the current year's tax is set. If the amount of the tax is reduced by abatement, the rebate, less the reasonable cost of obtaining it, shall be apportioned between the parties.

**13. TITLE:** The Premises shall be conveyed by a good and sufficient quitclaim deed unless otherwise specified herein (accompanied by a Certificate of Title, if registered), conveying a good, clear record, marketable and insurable title, free of all encumbrances and exceptions, except:
 a) Real Estate Taxes assessed or to be assessed on the Premises to the extent that such taxes then are not yet due and payable.
 b) Betterment assessments, if any, which are not a recorded lien on the premises, as of the dated of this Agreement.
 c) Federal, state, and local laws, ordinances, by-laws, and rules regulating the use of land, particularly environmental, building, zoning, health, rent control, and condominium conversion laws, if any, applicable as of the date of this Agreement, provided that as of the Closing Date, the Premises may be used as of right for single family residential use or, if the Premises is/is not a single family residence, the Premises may be used as of right for _____
 d) Existing rights, if any, in party or partition walls; and
 e) Utility easements in the adjoining ways.

**14. USE OF PROCEEDS TO CLEAR TITLE:** To enable SELLER to make conveyance as herein provided, the SELLER may at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, all instruments so procured to be recorded simultaneously with the delivery of said deed or at such later time as shall be reasonably acceptable to BUYER, and provided further, with respect to discharges or mortgages from insurance companies, banks and credit unions, such discharges may be recorded within a reasonable time after the recording of the deed.

**15. EXTENSION:** If, after a reasonable and diligent effort, SELLER is unable to convey title or deliver possession of the Premises as required hereunder, upon notice by either party, prior to the Closing Date, this Agreement shall be automatically extended for 30 days (or if Buyer's mortgage commitment sooner expires to a date one business day before the expiration of such commitment). Seller shall remove all mortgages, attachments and other encumbrances incurred or assumed by SELLER which secure the payment of money, provided the total amount thereof does not exceed the Purchase Price, and SELLER shall use reasonable and diligent efforts to remove other defects in title, or to deliver possession as provided herein or to make the Premises conform to the provisions hereof. At the end of the extended period, if all such defects have not been removed, or the SELLER is unable to deliver possession, or the Premises do not conform with the requirements of this Agreement, BUYER may elect to terminate this Agreement and to receive back all deposits, upon receipt of which all obligations of the parties hereto shall cease.

**16. STANDARDS:** Any title matter or practice arising under or relating to this Agreement which is the subject of a Title Standard or a Practice Standard of the Massachusetts Conveyancers Association shall be governed by said Standard to the extent applicable.

**17. WATER:** SELLER represents that the Premises (is) is not (delete one) served by a municipal water system. If the Premises is not served by a municipal water system, SELLER represents that the Premises is served by either (i) **a well located entirely within the boundaries of the Premises and contains no defects known to SELLER**, (ii) **a private water company**, or (iii) **see special conditions, paragraph 36** (delete inappropriate phrases).

**18. MASS. UFFI LAW:** The SELLER represents and warrants that Urea Formaldehyde Foam Insulation (UFFI) **is** (is not) once was (delete inappropriate words) present in the Premises and that UFFI has been declared by the Massachusetts Department of Public Health (DPH) to be a banned substance which may cause personal injury. If UFFI is or once was present in the Premises, BUYER acknowledges receipt of Mass. Disclosure Statement with a copy of the air quality test in possession of the SELLER, which is attached hereto and incorporated herein.

**19. LEAD PAINT LAW:** BUYER acknowledges that under Massachusetts Law, on homes constructed prior to 1978, and whenever a child under six (6) years of age resides in any premises in which paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said material so as to make it inaccessible to children under six (6) years of age. The BUYER further acknowledges that, prior to the signing of this Agreement, the SELLER and Broker(s) have (a) provided to the BUYER the standard notification form from the Massachusetts Department of Public Health concerning lead paint, the certificate for which BUYER has signed, which is attached hereto; (b) informed the BUYER of the availability of inspections for dangerous levels of lead; and (c) verbally informed the BUYER of the possible presence of dangerous levels of lead and the provisions of the lead paint law and regulations, found in 105 CMR 460.100D. Notwithstanding, SELLER is under no obligation to the BUYER to remove lead paint, which may be present in the Premises.

Seller's Initials _NB  FRP  DCR_                     Buyer's Initials _____

**20. ASBESTOS:** The BUYER acknowledges that the Department of Public Health has issued regulations governing the maintenance, repair and removal of asbestos material by any owner of real property and that asbestos material is a common insulation material on heating pipes, boilers, and furnaces.

**21. RADON GAS:** Radon gas is a radioactive gas, which occurs naturally in certain areas and may accumulate in some buildings in a high enough concentration to be a potential health hazard.

**22. UNDERGROUND STORAGE TANKS:** The parties acknowledge that the Massachusetts Board of Fire Prevention has issued regulations governing the maintenance, repair, and removal of underground storage tanks to prevent and detect leakage of tank contents into surrounding soil and water supplies. The SELLER hereby discloses that to the best of Seller's knowledge, there **are / are not** (delete one) one or more underground storage tank(s) at the Premises. If there are one or more underground tanks at the Premises, the SELLER further discloses that the tanks have / have not (delete one) been used within the past six (6) months exclusively for the storage of fuel oil for consumption of the Premises and to the best of the SELLER'S knowledge there has been no release or leakage of oil from such tank(s). If the Premises is not in compliance with 527 CMR 9.00 et.seq. and BUYER does not cancel this Agreement, pursuant to paragraph 6, BUYER shall be obligated to purchase the Premises and shall be deemed to have assumed the obligation to bring the Premises into compliance with 527 CMR 9.00 et. seq.

**23. CONDITION OF PREMISES AT CLOSING:** Upon delivery of the Deed, the Premises and all appliances therein and utilities serving the same shall be in their present condition, reasonable use and wear of same excepted. The Premises is to be left broom clean and all personal property and rubbish removed. With respect thereto, BUYER shall have the right to walk-through the Premises within twenty-four hours prior to the closing and if the sale is completed subsequent to said walk-through or if the walk-through is waived by BUYER, the foregoing condition of the Premises shall as between the BUYER and SELLER and their representatives (if applicable), be conclusively presumed to be acceptable to BUYER regardless of condition.

**24. NOMINEE:** BUYER may require the conveyance to be made to another person, persons, or entity ("Nominee"), upon notification in writing delivered to SELLER at least five days prior to the Date of Closing. The appointment of a Nominee shall not relieve BUYER of any obligation hereunder. Any Note or mortgage or other document to be delivered from BUYER to SELLER shall be executed by or unconditionally guaranteed by BUYER, unless otherwise specified herein.

**25. CLOSING:** Simultaneously with the delivery of the deed, SELLER shall execute and deliver:
a) Smoke Detector Certificate of Compliance;
b) Wood Stove permit, where applicable
c) Affidavits and indemnities with respect to parties in possession and mechanic's liens to induce buyer's title insurance company to issue lender's and owner's policies of title insurance without exception for those matters;
d) A bill of sale for all personal property included as part of the sale, if requested by the BUYER.
e) In the case of new construction, a Certificate of Occupancy and an assignment of any and all builder's, Sellers, or manufacturer's warranties on the Premises or on any appliances or other property included in the sale.
f) FNMA Vendor's affidavit FNMA 1099;
g) An affidavit, satisfying the requirements of Section 1445 of the Internal Revenue Code and regulation issued thereunder, which states under penalty of perjury, the seller's United States taxpayer identification number, that the SELLER is not a foreign person, and the seller's address (the "1445 Affidavit");
h) Internal Revenue Service Form W-8 or Form W-9, as applicable, with seller's tax identification number, and an affidavit furnishing the information required for the filing of Form 1099S with the Internal Revenue Service and stating SELLER is not subject to back-up withholding.

**26. RISK OF LOSS-INSURANCE AND DAMAGE PRIOR TO CLOSING:** Prior to the delivery of the Deed, the risk of loss shall be on the SELLER. SELLER shall continue to carry the fire and extended coverage insurance presently maintained on the buildings on the Premises (or, upon the written request of the BUYER, and at the buyer's expense, in such greater amount as BUYER may reasonably request). If the Premises is damaged by fire or other casualty prior to the Closing Date, and SELLER has not restored the Premises to their former condition, the BUYER has the option to take an assignment of SELLER'S insurance proceeds or terminate this Agreement. If BUYER elects to purchase, SELLER shall assign all insurance proceeds to BUYER and the Purchase Price shall be reduced by:
a) the net amount of any insurance proceeds which a mortgagee has applied to the mortgage debt, less any amount reasonable expended by SELLER for partial renovation.
b) the amount of any insurance proceeds received by SELLER; and
c) any deductible amount under SELLER's insurance policy. SELLER will credit BUYER the amount of the deductible toward purchase price.

**27. ACCEPTANCE OF DEED:** Acceptance of the deed by BUYER shall be a full performance and shall discharge every agreement and obligation herein except any agreements which by their terms are to be performed after the Closing. THE BUYER FURTHER ACKNOWLEDGES THAT THE BUYER IS PURCHASING THE PREMISES 'AS IS' and BUYER has not relied upon any statements or representations, oral or written, regarding the condition or value, present or future, of the Premises made either by the SELLER or the Seller's Agents, which are not otherwise contained in this Agreement and that the Seller's Agents are acting exclusively upon behalf of the SELLER. All oral or written representations between the parties are merged herein. BUYER further acknowledges it is the BUYER'S responsibility prior to closing to obtain any and all governmental permits for any intended use of the Premises including, but not limited to, health or environmental department, planning or zoning board approvals. SELLER and SELLER'S representative(s) make no representations as to the adequacy of the Premises being conveyed for BUYER'S intended purposes, disclosed or undisclosed.

**28. MERGER:** The parties agree that this Agreement contains all of the terms and conditions of this transaction. It is mutually agreed that any oral or prior written representation made by either party prior to the execution of this Agreement is null and void. This Agreement shall be construed as a legal contract under seal and is binding upon the parties, and their respective heirs, successors, and assigns.

**29. SURVIVAL:** Notwithstanding any presumptions to the contrary, all covenants, conditions, and representations contained in this Agreement, which by their nature, implicitly or explicitly, involve performance in any particular manner after the Closing and delivery of the deed, or which cannot be ascertained to have been full performed until after the Closing and delivery of the deed, shall survive the Closing.

**30. TERMINATION:** In the event the BUYER terminates this Contract in accordance with the provisions herein relating to "Mortgage Contingency," "Risk of Loss Insurance," "Inspection Contingency," "Septic System Inspection", default by SELLER, or the failure of any contingency shown under special conditions, the Escrow Agent shall forthwith refund such deposit money together with accrued interest thereon (if applicable) to the BUYER.

**31. BUYER'S DEFAULT:** If the BUYER defaults, BUYER shall be liable to the SELLER in the amount of 10% of the purchase price, as liquidated damages, which shall be Seller's exclusive remedy in law or in equity. The deposits shall be applied to the payment of said liquidated damages

**32. RELEASE OF DEPOSITS:** The deposits (which term shall include all interest earned, if any) made hereunder shall be held in escrow, subject to the terms of this Agreement and shall be duly accounted for at the time for performance of this Agreement. The deposits may not be released from escrow without the assent of both BUYER and SELLER. The recording of the deed to the Premises shall constitute such assent. In the event of any disagreement, the Escrow Agent shall retain the deposits pending written instructions by both the SELLER and BUYER, or by a court of competent jurisdiction. So long as Escrow Agent served in good faith, BUYER and SELLER each agrees to hold harmless Escrow Agent from damages, losses, or expenses, arising out of this Agreement or any action or failure to act, including reasonable attorney's fees, related thereto. BUYER and SELLER acknowledge that the Escrow Agent may be counsel or fiduciary to one of the parties and agree that Escrow Agent may continue to act as such counsel or fiduciary notwithstanding any dispute or litigation arising with respect to the deposits or Escrow Agent's duties.

**33. AGREEMENT TO MEDIATE DISPUTE OR CLAIMS:** Any dispute or claim arising out of or relating to this Agreement, the breach of this Agreement, or the brokerage services provided in relation to this Agreement shall be submitted to mediation in accordance with the Rules and Procedures of the Homesellers / Homebuyers Dispute Resolution System ("DRS"). Disputes and claims shall specifically include, without limitation, representations made by the SELLER, the BUYER, or the Broker(s) in connection with the sale, purchase, finance, condition, or other aspect of the Premises to which this Agreement pertains, including without limitation, allegations of concealment, misrepresentation, negligence and / or fraud. The mediation conference shall be held within 30 days from the date on which the mediator receives notice of the dispute. If the parties reach a settlement, they shall both sign a settlement agreement. If the parties cannot reach a mutually agreeable settlement, they may arbitrate or litigate the dispute without regard to the mediation procedure. The filing of a judicial action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies shall not constitute a waiver of the right to mediate under this paragraph, nor shall such filing constitute a breach of the duty to mediate. The provisions of this paragraph shall survive the closing.

**34. GOVERNING LAW:** This Agreement is to be governed by the substantive laws of the Commonwealth of Massachusetts.

**35. AGENCY:** BUYER and SELLER acknowledge that they have been provided with a completed copy of the 'Mandatory Agency Disclosure Agency Relationship' form, as mandated by the Massachusetts Board of Registration of Real Estate Brokers and Salespersons.

**36. SPECIAL CONDITIONS / ADDENDA:** _Contingent upon buyer hook-up to Pittsfield sewer. Contingent upon liquor license transfer by 8/15/03. Contingent upon an equipment list being agreed to by seller + buyer within 10 days of acceptance._

**37. TERMINATION OF OFFER:** This offer is subject to acceptance by SELLER by _5 P.M. 5/07/03_, after which time this offer is void and terminated, and deposit paid by BUYER shall be returned.

**38. TIME:** Time is of the essence of all provisions of this agreement, unless otherwise specified elsewhere in this agreement. Any reference to "days" shall mean calendar days and is not intended to mean only business days.

**39. THIS IS A LEGALLY BINDING CONTRACT. IF NOT UNDERSTOOD, SEEK LEGAL COUNSEL:** Executed under seal by the Parties hereto as of the latter of all dates set forth below, and incorporating all provisions on pages 1 through 4, together with referenced additions, if any.

_Joseph Brunt_ 5-7-03
_Frank R Pena_ JJB 5-7-03
**SELLER** **DATE**

_Dennis C Barry_ JJB 5-7-03
**SELLER** **DATE**

_Campoli & Campoli_
**SELLER's Attorney's Name**

X _[signature]_ 5/6/03
**BUYER** **DATE**

**BUYER** **DATE**

_Mike McDonald_
**BUYER's Attorney's Name**